# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>HARRIET H. GRAY,<br><br>       Debtor. | Case No.  09-14445-RGM<br>(Chapter 13) |
| HARRIET H. GRAY,<br><br>       Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>       Defendant. | Adv. Proc. No. 09-1224 |
| REYNALDO ORBE and<br>ENSUED ORBE,<br><br>       Debtors. | Case No. 09-14004-RGM<br>(Chapter 13) |
| REYNALDO ORBE and<br>ENSUED ORBE,<br><br>       Plaintiffs,<br><br>vs.<br><br>EMC MORTGAGE CORPORATION,<br><br>       Defendant. | Adv. Proc. No. 09-1325-RGM |

## MEMORANDUM OPINION

These two chapter 13 cases are before the court on motions for default judgments. The lenders did not defend the suits and are in default. Both debtors now ask the court to enter default

judgments stripping off the subordinate deeds of trust from their homes. The court is unwilling to enter default judgments at this time because it is not satisfied with the evidence of the value of the properties.

## **Background**

Both debtors alleged that the lien of the first deed of trust encumbering their home was the amount claimed by the first trust holder in the proof of claim filed in their case. Fed.R.Bankr.Proc. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.") In Gray, the first trust as of the date of the filing of the petition was $299,267.48. In Orbe, the first trust was $522,051.64. They also alleged that their homes were worth less than these amounts. Gray asserted, based on a broker's Competitive Market Analysis, that the value of her home was less than $280,000. The Orbes asserted, based on an internet valuation, that the value of their home was $314,226. The Orbes buttressed their internet valuation with the county's real estate tax assessment for 2009 which was $303,700.[1] Both Gray and the Orbes concluded that the first trusts exceeded the value of their homes and, therefore, the second trust must be wholly unsecured. The difficulty is not with the balance due on the first trust as of the date of the filing of the petition, but the valuation of the homes on that date.

The significant increase in bankruptcy filings during the last two years in this court is directly related to the recent extraordinary real estate market. Many people purchased or refinanced houses at the then fair market value, only to find that the values later dropped significantly. The decline in

---

[1] Gray's tax assessment was included in the Competitive Market Analysis but she did not separately argue that is established the value of her home. The tax assessment exceeded the balance of the first trust.

housing values has not been uniform throughout Northern Virginia. Some areas were harder hit than others. It is not yet clear to what extent the market has stabilized or where the values will end up. The court must take into account this history of recent rapid changes in housing valuations and the uncertainties still existing in the real estate market when determining the value of particular properties.

### Broker's Competitive Market Analysis

Gray presented a real estate broker's Competitive Market Analysis as evidence of the value of her home. The broker's Competitive Market Analysis is no more than a computer printout of 11 properties sold during the first months of 2009 that the broker characterized as comparable. Each has a single small photograph of the comparable property, typically a view of the front of the house. Each lists basic information, such as lot size, year built, number of bedrooms and seller's subsidy. All were sold and had gone to closing. Each has a column for adjustments to the basic information, but no adjustments were made. The "Total Adjusted Value" for each property is the sales price.

The broker's Competitive Market Analysis form is similar to an appraisal form. Unlike an appraisal, there were no adjustments and no analysis of the facts. The value given for Gray's home is not a discrete number, but a range from $250,000 to $280,000. The lower end is, with the exception of one comparable, the lowest sales price. The upper end is the median of ten of the comparables. The range endpoints are not explained nor are the reasons for their selection apparent.

It is clear that adjustments must be made to each comparable to determine the value of Gray's property. One is lot size. Gray's lot is 13,020 square feet, larger than all of the others. Three are in the 12,000 square-foot range; the rest in the 7,000 to 8,000 square-foot range. The additional land

may have an effect on value. Another is the age of the properties. Gray's home was built in 1950. All were built from 1946 to 1951. While they are comparable in age, the photographs reflect that some have been improved, enlarged or renovated. Some have not. An adjustment for improvements and renovations is appropriate. Condition is a closely related factor to age. The property condition for Gray's home is stated as "fair." Seven of the comparables are stated as "as-is condition." One is stated as "Shows Well." The rest have no description. The actual conditions are unknown. An adjustment is necessary reflect the differences. Not all the properties have the same number of bedrooms and baths. The relative location of the properties is not known. No map was attached. With one exception, all of the contracts were entered from December 2008 to February 2009. In this market, the six-month period between the last contract and the date of the filing of the petition in this case is significant. Many of the sales report a seller subsidy, a factor that may reduce the actual value of the property.

The broker's Competitive Market Analysis is not sufficient in this market to show that the value of Gray's home is less than the balance due on the first trust. It was prepared on May 4, 2009, four months before the petition was filed. It was not updated to the date of filing. No adjustments were made to the comparable listings. No explanation of the choice of the comparable properties was offered. There was no analysis of the information and no determination of a discrete fair market value of Gray's home.[2]

---

[2]The broker disclaims responsibility for the accuracy of the information contained in the Competitive Market Analysis. He states in a footer, "Information is believed to be accurate, but should not be relied upon without verification. Accuracy of square footage, lot size and other information is not guaranteed." It is difficult for a court to rely on the information with such a disclaimer.

### Internet Valuation

The Orbes submitted a printout from a website and the county's real estate tax assessment record. The tax assessment record shows that the Orbes purchased the property on October 3, 2006, from NVR, Inc., a real estate developer, for $581,804.00. The real estate tax assessment for 2007 was $485,400.00; for 2008, $392,600.00; and for 2009, $303,700.00. The date the contract of sale was executed by the Orbes is not known. The internet valuation was $314,226.00, with a range of $282,803.00 to $361,359.00. The valuation was printed on October 15, 2009. They filed their case on May 20, 2009. Four properties listed as comparable in the printout. All that is known about them is the sales price and the number of bedrooms and baths. No map was submitted to enable the court to locate them with respect to the Orbes' home.

The problem with the internet valuation is that the court has no idea how the valuation was made or the information upon which it was based. Property valuation is, except for the owner of the property, generally testimony that requires an expert witness. The court cannot evaluate the internet company's expertise. The court cannot evaluate the facts or data upon which the valuation is based. The court cannot determine the principles or methods used to derive the valuation. The court cannot determine whether the internet company applied the principles and methods reliably to the facts. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Fed.R.Evid. 702. The court can reasonably conclude that the internet company did not individually appraise the Orbes' home and that the valuation is based on data that is subject to a statistical analysis or the application of an algorithm. However, the data set is unknown. The type of statistical analysis is unknown. The algorithm, if any, is unknown. What is known, is that this is a different methodology than used by real estate appraisers. Appraisers do not use statistical

analysis or algorithms to value individual residential properties. They compare actual sales of comparable properties and make appropriate adjustments to determine the value of the property being valued. They may also use a construction costs analysis and an income analysis. For residential real estate, the comparable sales methodology is the most common. Without the underlying facts or an understanding of the statistical analysis or the algorithm used, the anonymous internet valuation is of limited utility.

### Real Estate Tax Assessments

Both Gray and the Orbes submitted January 1, 2009 real estate tax assessments of the local jurisdiction in which their homes are located and taxed. Real estate tax assessments are required to be at 100% of the fair market value. Va.Code (1950) §58.1-3201. The Court of Appeals for the Fourth Circuit did not find it error to admit a real estate tax assessment as evidence of valuation in a case involving a copyright infringement brought by an architect against a homeowner who used the architect's plans without consent, but the court did not discuss the weight to be given to the tax assessment. *Christopher Phelps & Associates, LLC v. Galloway,* 492 F.3d 532, 542 (4th Cir.2007). There are, however, weaknesses with real estate tax assessments. They are as of January 1 of each year. Review of them over time shows that while they usually are within a consistent range of fair market value each year, the range varies over time. In times of rapid market value changes, they tend to be least reliable. They are not individual appraisals, but are the results of statistical models.

The real estate tax assessments of all of the properties in Gray's broker's Competitive Market Analysis exceed the balance of her first trust. The tax assessment on her home is $319,550 which is more than the balance of her first trust. Gray does not emphasize the use of her tax assessment

and for good reason. If her tax assessment was accepted as determinative, the second trust would be secured by some equity in Gray's home and Gray could not strip it off. Conversely, the Orbes rely, in part, on the tax assessment – admittedly from a different jurisdiction – to corroborate the internet valuation. A closer look at the real estate tax assessment raises unanswered questions. They purchased their home in 2006, closing on October 3, 2006. The purchase price was $581,804. A recent arms-length transaction is usually excellent evidence of valuation. *Keswick Club, L.P. v. County of Albemarle,* 273 Va. 128, 139-140, 639 S.E.2d 243, 249 (2007). However, the county's January 1, 2007 tax assessment was $485,400, almost $100,000 less than the price they paid on October 3, 2006. The difference may reflect the market decline from the date of the contract. It may be a result of the statistical method the county used to make the tax assessment. There may be other explanations. However, there is an unexplained inconsistency: the Orbes' tax assessment was $10,526 lower than the internet valuation while Gray's tax assessment was between $39,550 and $69,550 higher than Gray's broker's Competitive Market Analysis.[3] What is clear is that there are difficulties in relying on the proffered real estate tax assessments without additional analysis.[4] Tax assessments may be evidence, but are not necessarily determinative. *In re Taylor,* 261 B.R. 877, 886-887 (Bankr.E.D.Va.2001); *Burke and Herbert Bank & Trust Co. v. Crockett (n re Crockett),* 11 B.R. 822, 826 n.2 (Bankr.E.D.Va.1981).

---

[3] No adjustment is made for the passage of time. The tax assessments are as of January 1, 2009. Gray's valuation was as of May 4, 2009. The Orbes' valuation was as of October 15, 2009. The critical dates for the valuations are the dates of the filing of the petitions. For Gray that was June 3, 2009. For the Orbes it was May 20, 2009.

[4] The problem may lie with the internet valuation or the broker's Competitive Market Analysis.

### **Default Judgment**

Federal Rule of Bankruptcy Procedure 7055 which incorporates Fed.R.Civ.Proc. 55(b)(2) governs default judgments. Granting a default judgment is within the discretion of the trial court. *Ganther v. Ingle,* 75 F.3d 207, 209 (5th Cir. 1996) ("A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."); *Silva v. City of Madison,* 69 F.3d 1368, 1377 (7th Cir. 1995); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2nd Cir. 1993). The court may conduct hearings to establish the truth of any allegation by evidence or to investigate any other matter. Fed.R.Civ.Proc. 55(b)(2). At the same time, well-pleaded facts are admitted by a party's default. *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir.2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *DIRECTV, Inc. v. Rawlins,* 523 F.3d 318, 322 n.2. Admitting well-pleaded allegations of fact does not admit conclusions of law or the movant's entitlement to the relief requested.

Valuation is not, like the color of a car, directly observable. Valuation is derived from other facts. Fed.R.Evid. 701 and 702 are instructive. Valuation is an opinion. Lay witnesses may testify as to their opinions or inferences if they are "(a) rationally based on the perception of the witness . . . and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701. It is well accepted that owners may testify as to the value of their property. If a witness is not the owner of the property sought to be valued, he must qualify as an expert under Rule 702 in order to testify as to his opinion of value. Qualified experts may testify to the facts upon which they base their opinions and the methodology or process they used. Valuation testimony is more complex than testimony of the color of a car. The predicate facts need to be identified and understood before a valuation is reached and the court can decide what weight to give

the opinion. In a hearing on a default motion in the market environment in which these motions are pending, the court should exercise its discretion to examine more closely the truth of the allegation (which is in the form of an opinion) of value and satisfy itself that the movant is entitled to the relief requested. In these cases, the broker's Competitive Market Analysis and the internet valuation are not sufficient. The real estate tax assessments are interesting but not determinative. If the tax assessments were determinative, one debtor would be granted relief and the other would be denied.

The evidence submitted to prove the valuation of the debtors' homes is not sufficient to grant default judgments and the motions will be denied.

Alexandria, Virginia
January 15, 2010

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

H. Darden Hutson
Russell B. Adams, III
Thomas P. Gorman

15708